**George Luis GANDARA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–82–00222–CR.

Court of Appeals of Texas, El Paso.

Nov. 2, 1983.

---

**750**

David C. Guaderrama, Guaderrama & Guaderrama, El Paso, for appellant.

George Rodriguez, Jr., County Atty., El Paso, for appellee.

Before PRESLAR, C.J., and WARD and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal from a jury conviction for driving while intoxicated. Punishment was assessed by the jury at five days confinement in the county jail and a fine of $250.00. We affirm.

■ In Ground of Error No. One, Appellant challenges the legitimacy of the stop leading to his arrest and the administration of an intoxilyzer test. The court overruled his motion to suppress. At 12:30 a.m., September 24, 1981, Officers Adcox and Norman were on patrol in El Paso, Texas. They observed a white Cadillac parked across both traffic lanes in front of a bar. The vehicle was straddling the white line and blocking traffic in both directions. A pair of legs were seen protruding from the right front passenger door. They circled the block and approached the vehicle, which had not moved. Other than the legs, they could not observe anyone in the vehicle. After flashing their bright lights, the officers observed the Appellant rise behind the steering wheel. The female passenger, whose legs had been protruding, exited and walked to a nearby car. The white Cadillac moved near her. She approached it again, yelling, "don't do it, don't do it." Both officers testified that the driver of the Cadillac was subject to citation for blocking the road. Tex.Rev.Civ.Stat.Ann. art. 6701d, sec. 93(a) (Vernon 1977). This alone provided a reasonable basis for the officers to approach the Appellant's vehicle, although they were further stimulated by the other physical and verbal behavior observed. In any event, the initial stop for investigative purposes was properly based upon reasonable articulable facts. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon approaching the subject, the officers detected the odor of alcohol and bloodshot eyes. Appellant's speech was slurred and, upon exiting, he staggered and had to support himself against the vehicle. Ground of Error No. One is overruled.

■ In Ground of Error No. Two, Appellant contends that the court erred in

admitting the results of the intoxilyzer test. It is his contention that the legislative validation of the scientific reliability of chemical testing of a suspect's breath contained in Tex.Rev.Civ.Stat.Ann. art. 6701*l*–5, sec. 3 (Vernon 1977) does not extend to the intoxilyzer device. See: *Slagle v. State,* 570 S.W.2d 916 (Tex.Cr.App.1978). The legislature has approved the introduction of chemical test results demonstrating blood alcohol content if the method is approved by the Texas Department of Public Safety and the test is conducted by an individual whose competence to administer the test is certified by the D.P.S.

The evidence disclosed that the intoxilyzer test has been approved by the D.P.S. and that that agency has established a training and certification program both for the equipment, the operators and their supervisors. Appellant argues that the phrase "chemical analysis of ... breath" in Article 6701*l*–5 means a test of one's breath *by* chemicals as opposed to a test *of* the chemicals in the breath. We find the distinction insignificant. The purpose of the test is to ascertain the chemical content of the breath and scientifically correlate the results to an anticipated chemical content of the blood. The intoxilyzer procedure achieves that purpose despite its use of infrared light in lieu of reactive chemicals.

Furthermore, the scientific reliability requirement in this case rests not only upon the inclusion of intoxilyzer testing within the scope of Article 6701*l*–5 but upon the testimony of Lieutenant Peña, El Paso Police Department. Pena was the Technical Supervisor of the intoxilyzer program in El Paso, having previously performed the same function under the breathalyzer program. Pena holds a Bachelor of Science degree from the University of Texas at El Paso. He worked for nine years as a certified hospital laboratory toxicologist. He was certified by the D.P.S. as a supervisor for both breathalyzer and intoxilyzer operations. Following a three-month course at the F.B.I. Academy, he was certified as a toxicologist by that agency. He attended a chemical breath analysis program conduct-ed by the North Carolina Medical Examiner's Office. He had attended numerous other related courses and conducted his own experiments on the correlation between blood and breath alcohol content. He described the intoxilyzer process, including its detection of alcohol and its discrimination of acetone in a suspect's breath sample. Pena testified that infrared analysis of chemicals was a long-established method in the field of chemistry, with a good history of reliability. Such evidence of reliability from an expert in the field supports the admissibility of scientific test results independently of the legislative endorsement.

The remainder of the testimony from Pena and test operator Sanchez established a proper predicate for the introduction of this specific test result. *Bumpus v. State,* 509 S.W.2d 359, 361 (Tex.Cr.App.1974). The traditional breathalyzer predicate must of course be modified to an extent reflecting the different nature of the test device. Sanchez was a D.P.S. certified operator, supervised by Pena, whose competence was also certified by the state agency. The test alcohol solution was properly prepared by Pena and the device was functioning properly at the time of the test, as evidenced by Pena's periodic calibration and evaluation of the test equipment. The test was conducted in the approved manner and the test results interpreted for the jury by Pena. Ground of Error No. Two is overruled.

The judgment is affirmed.